UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH CELL PHONE CALL NUMBER 860-977-6054 | Case No. 3:23MJ 960 (TOF) **Filed Under Seal** November 1, 2023 |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Tyler Billings, being duly sworn, state:

**INTRODUCTION**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) for location information pertaining to the device assigned cellular telephone number 860-977-6054 (the "TARGET PHONE"). The service provider for the TARGET PHONE is Cellco Partnership, d/b/a Verizon Wireless ("Verizon") with offices located in Bedminster, New Jersey.  As a provider of wireless communications services, Verizon is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in Attachment A.  The information and records to be disclosed by Verizon to the government are further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I am assigned to Homeland Security Investigations (HSI), in Rutland, Vermont as a Task Force Officer (TFO).  HSI is the investigative arm of the Department of Homeland Security (DHS).  HSI is responsible for enforcing over 400 federal criminal statutes of the United States.  I am a law enforcement officer in the State of Vermont, and I am authorized by law to conduct

investigations of, and to make arrests for, felony offenses.  I have been a full-time Certified Law Enforcement Officer in the State of Vermont since 2017, and I have been a TFO with HSI since October 2022, assigned to the HSI Rutland office.  I am also a Detective for the Rutland City Police Department (RPD).

4.     I have received specialized training related to the investigation of money laundering, financial crimes, narcotics trafficking, homicide investigations, and firearms trafficking.  In connection with my duties as a Task Force Officer and Detective, I have participated in various aspects of investigatory work and have conducted investigations regarding fraud, weapons trafficking, homicides, and drug smuggling. I have interviewed subjects regarding various criminal activities, to include homicides. I have reviewed and developed information from cellular telephones to further investigations. From my training and experience, I am aware of methods and tactics used in the execution of homicide investigations. During my career, I have received extensive training related to criminal investigations. I have authored numerous search warrants and participated in hundreds of criminal investigations. More specifically, I have conducted interviews of witnesses, victims, and suspects, participated in physical and electronic surveillance, utilized pen registers and trap and trace devices, participated in numerous search and seizure warrants and arrest warrants. I have participated in searches authorized by consent, warrants, and other legal grounds for residences, businesses, cellular telephones, and vehicles, for the purpose of obtaining evidence.

5.     Based upon this experience, I have gained knowledge in the use of various investigative techniques including physical and electronic surveillance, confidential informants, and cooperating witnesses, consensually monitored recordings, interviews, and service of legal process including subpoenas and search warrants.

6.    The Court has jurisdiction to issue the proposed warrant because the information sought "is in . . . a district in which the provider . . . is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).  Further, to the extent the requested warrant authorizes a search of a device within the purview of Federal Rule of Criminal Procedure 41, this Court has venue because—as described below—there is reasonable cause to believe the device is located within the District of Connecticut.

7.    Because this warrant seeks the historical as well as prospective collection of information that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), an order pursuant to the Pen Register Act (*see* 18 U.S.C. §§ 3121-3127) authorizing the installation and use of a pen register and trap and trace device on the TARGET PHONE for sixty days was obtained in the United States District Court for the District of Vermont on October 26, 2023 on miscellaneous docket number 2:23-mc-00144.

8.    The facts set forth in this affidavit come from my personal observations, my training and experience, information obtained from other investigators and witnesses with whom I have communicated, and reports and/or business records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation.  Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

**PROBABLE CAUSE**

9.      On October 18, 2023, a federal grand jury sitting in Rutland, Vermont issued an indictment charging Bayohan Mangual with, on or about September 2, 2023, knowingly possessing ammunition in and affecting interstate commerce, while knowing that he had been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).   An arrest warrant was issued in connection with the indictment.   Thus, Mangual is a person to be arrested within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

10.      On September 2, 2023, RPD Detective Corporal Adam Lucia began investigating a homicide that occurred at 50 Cherry Street Apartment 2, in Rutland, Vermont, on September 2, 2023.   During the investigation, a male identified as Bayohan Mangual was identified as the suspect in the shooting death of Santoneio Miller.

11.      On or about September 20, 2023, Special Agent (SA) Joseph Dornbierer of Homeland Security Investigations advised that phone number 860-977-6054 (TARGET PHONE) was listed as Mangual's phone number when registering his passport.

12.      Using Zetx, RPD Detective Corporal Lucia was able to determine the TARGET PHONE was a wireless number associated with Verizon Wireless. Zetx is a law enforcement tool that provides law enforcement with phone carrier information for telephone numbers involved in law enforcement incidents.

13.      On September 20, 2023, RPD Detective Corporal Lucia obtained a search warrant in Vermont Superior Court for account records, device information, communication/call detail records, historical location records, and carrier keys held by Verizon for the TARGET PHONE. On October 30, 2023, Verizon produced records to RPD in response to that search warrant.

14.     On or about October 20, 2023, RPD Detective Corporal Lucia learned that the TARGET PHONE was listed on loan documentation from PenFed Credit Union related to Mangual's auto loan.

15.     On or about October 27, 2023, RPD Detective Corporal Lucia learned Mangual used the TARGET PHONE on a Greenwood Credit Union credit application.  Mangual listed the TARGET PHONE number under the cell number tab of the applicant information section of the application.

16.     On or about October 30, 2023, RPD Detective Corporal Lucia learned from Verizon that Mangual was listed as the subscriber of the TARGET PHONE.  RPD Detective Corporal Lucia reviewed records from Verizon that show that the TARGET PHONE is an Apple iPhone 14 Pro Max 5GM.  The TARGET PHONE has been active since at least August 1, 2023. The subscriber information indicates the address for the TARGET PHONE to be 121 Barnes Street, New Britain, Connecticut.

17.     On or about October 27, 2023, one of Mangual's supervising probation officers contacted and spoke to Mangual utilizing the call number associated with the TARGET TELEPHONE.

18.     According to records obtained from PenFed Credit Union, Mangual listed 121 Barnes Street, New Britain, Connecticut as his address on PenFed Credit Union auto loan paperwork on or about April 13, 2022.  According to records obtained from Greenwood Credit Union, Mangual listed 121 Barnes Street, New Britain, Connecticut as his address on Greenwood Credit Union auto loan paperwork on or about August 16, 2022.

19.     Mangual is currently on federal supervised release in the District of Connecticut. RPD Detective Corporal Lucia spoke with one of Mangual's supervising probation officers on

September 25, 2023 and learned that 121 Barnes Street in New Britain is the address where Mangual has told Probation that he is residing. One of Mangual's supervising probation officers last visited Mangual at 121 Barnes Street in New Haven on September 22, 2023.

20.     As described above, there is reason to believe that the TARGET PHONE is currently located within the District of Connecticut. Mangual appears to reside in New Britain, Connecticut and to use the TARGET PHONE as his personal phone.

### Information Regarding Cellular Service Providers

21.     In my training and experience, I have learned that Verizon is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

22.     Based on my training and experience, I know that these records related to historical cell-site data can provide data related to the user of a target cellphone that reveals the patterns of their daily life. Because most cellphone users take their phones with them as they travel from location to location, the cell-site data created through their daily use of the cellphone will reveal patterns of activity that allow law enforcement to predict a particular cellphone user's likely future

path of travel.  In my training and experience, I have learned historical cell-site data are often valuable to determine places the TARGET PHONE has remained stationary for long periods of time with little activity, such as times and places the users may have stayed overnight or places the user may spend time during the day. In addition, historical cell-site data can help to determine patterns of movement such as routes of travel and times of travel. These "pattern of life" data can be very helpful to law enforcement when attempting to apprehend a person to be arrested.

23.     Based on my training and experience, I know that Verizon collects cell-site data for phones to which it provides service as part of the records it maintains in its usual course of business.  Further, I know that Verizon can collect cell-site data on a prospective basis about the TARGET PHONE.   Based on my training and experience, I also know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

24.     Based on my training and experience, I also know that Verizon also can collect per-call measurement data, also called the "real-time tool" or "RTT."  RTT data estimate the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location that is more precise than typical cell-site data.

25.     Also based on my training and experience, I know that providers of cellular telephone service such as Verizon generally have technical capabilities that allow them to collect and generate information about the specific locations of the cellular telephones to which they provide service, including E-911 Phase II data such as GPS locations or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

26.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

27.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

## AUTHORIZATION REQUEST

28.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41. I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

29.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2)

30.     I also request that the Court direct Verizon to furnish the government with all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with

Verizon's services, including by initiating a signal to determine the location of the TARGET PHONE on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

31.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

32.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET PHONE outside of daytime hours.

33.     Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

TYLER L BILLINGS
Digitally signed by TYLER L BILLINGS
Date: 2023.11.01 17:19:44 -04'00'

TYLER BILLINGS
Task Force Officer
Homeland Security Investigations

Subscribed and sworn before me over the telephone
this  2nd   day of November, 2023

Date: 2023.11.02 10:32:17 -04'00'

HON. THOMAS O. FARRISH
UNITED STATES MAGISTRATE JUDGE

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1.    The cellular telephone assigned call number 860-977-6054 (the "TARGET PHONE"), with listed subscriber Bayohan Mangual, which utilizes the network belonging to Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), a wireless communications service provider whose offices are located in Bedminster, New Jersey.

2.    Records and information associated with the TARGET PHONE that are within the possession, custody, or control of Verizon.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by Verizon**

PROSPECTIVE INFORMATION

All information about the location of the TARGET PHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the TARGET PHONE" includes all available E-911 Phase II data, GPS data, Periodic Location Updates, L-Site data, latitude-longitude data, RTT data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A, and estimated or known locations.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the TARGET PHONE on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

<u>HISTORICAL INFORMATION</u>

All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET PHONE on or after September 20, 2023, including:

A.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

B.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as "real-time tool" or "RTT").

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

II.      <u>**Information to be Seized by the Government**</u>

All information described above in Section I that shows the location of Bayohan Mangual, a person to be arrested.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.